The first case for argument this morning is 23-2262 IGT v. Zynga. Ms. Kurtz, did I mispronounce your name?  Please proceed. May it please the Court. The Board erred in declining interference estoppel to this IPR. The Board's decision that interference estoppel no longer applies to IPRs was contrary to the plain language of Section 41 .127, contrary to its prior rulings in Mexicam in 2021 and Adama in 2016, and was a remarkable and unexplained reversal of office policy. That's only one of three grounds, right, for declining estoppel here. What about the other two grounds? Yes, Your Honor. The Director had two grounds, right, of which you just described one. But the other ground was that when a threshold issue, sometimes I guess here called standing, never mind the connotations of that, was shut down in the proceeding, at that point, the 103 issues could not be decided, and under the language of the regulation, it is at least reasonable to read the regulation to say that unless, that it covers only what could have been presented and decided. Yeah, sure, Your Honor. And then the third ground was the waiver. The waiver, which the Director didn't reach. And she didn't reach that one, that's right. So, you know, we think that the language is clear in the other direction. And then, this argument on the threshold issue fails because the clear text of estoppel makes clear that once interference is declared and a judgment is entered, the effect within the office is that the estoppel is created based on Zinga's conduct in terms of what Zinga could have but did not move on. But the language says what could have been, what is it, raised and decided. And they clearly could have raised the issue, but they couldn't have gotten it decided because there was this threshold, let's just call it a standing bar. This is no written description for them to have put all of the claim language into count to create a count. So they could not actually have gotten these decided. Why isn't that the fairer reading of the regulation, particularly against the background of a similar kind of limitation on claim splitting out there in the general common law world of race judicata? With all due respect, Your Honor, the reason why that's not a fair reading is because it ignores and gives no effect to the second sentence of 41.127, which says a losing party who could have properly moved for relief on an issue, but did not so move, may not take action in the office after the judgment that is inconsistent with that party's failure to move. So I didn't understand, I'm glad you referred to that, and I think that that's an important thing for you to be relying on. I don't understand what that language, take action that is inconsistent with the party's failure to move. I literally do not understand what that means. And so as you recognize, interference estoppel has roots in race judicata principles. It was applied for close to 100 years, and it was codified in 1984 by rule, and so that's what we're relying on is the rule. But the theory of interference estoppel is that if you're going to put in jeopardy someone else's patent, you need to show all your cards. And that is focusing on that tenet, which is that if you're going to challenge the validity of my patent in an interference, you need to show your cards. You can't later go into the office on a new ground and raise yet another attack on patentability. And the section 135, the statute on interferences, was amended in 1984 at the same time, which specifically gave the office discretion to address patentability while they don't have to reach patentability. Cases interpreting that have said they have the authority to reach patentability. Therefore, they could have reached patentability, notwithstanding the written description issue, but they chose not to in this case, thinking that actually in the opinion it wouldn't be fair to IGT because here they are challenging our patent. And in interesting ADAMA, the ADAMA case parallels significantly to that of IGT because there there was a written description issue that had been decided adversely. And so in that case as well, it was decided on written description grounds and estoppel applied. Similarly, in Kenmore's, there were grounds that were not raised, and when I say were not raised by, they didn't seek authorization before the board to bring that motion to challenge that ground of invalidity and they were barred by interference estoppel. So we think that, you know, the language has been clearly applied for decades and most recently with respect just to IPRs, to opinions, it was absolutely arbitrary and capricious for the board to have a reversal policy suespante on this issue. It didn't even address or try to distinguish Kenmore's or ADAMA. Those were non-presidential board decisions. You're correct, Your Honor. But under the APA, even an informal office policy requires the board, if it wants to deviate from that policy, to provide a reasoned explanation for the deviation, and they didn't do that. The board, again, suespante wasn't argued by Zinga. No one had argued this. It was the second suespante argument as to why the board didn't want to apply interference estoppel to this IPR, which seems by definition arbitrary and capricious when there was a pattern of applying interference estoppel to IPRs for years. And so we think that's, you know, if you look at those cases, you look at the intent of interference estoppel, that's why... I'm sorry. This particular point is just the first of the director's grounds, not the second? The threshold issue is the... The threshold issue, whether Chapter 42... That's the first ground, is the incorporation by reference. But what about the scope of 41.127 itself? Is that inconsistent? That is, is there... I don't think you've indicated that there were precedential decisions at director level or at director level that said when there is a ground on which the interference is... I don't know what the right term is, dissolved, terminated, that is treated under the regulation, the definition of threshold issue, which I think says if you decide this, you can't decide other things, that that would be a reason not to find a 102, 103 ground that you could have presented in the interference, but you couldn't have gotten a rule on as covered by the 41.127. I think I follow what you're asking, Your Honor. Sorry, it was a little convoluted. Yeah. So, again, this area is complicated, but the... I'm not sure how complicated it is. I guess I was just trying to ask. Yeah. Is there some precedent that on state farmish grounds had to be dealt with and distinguished by the director in saying what she said in her ground number two? Well, again, under the APA, we believe that if there had been an informal office policy or informal office policy on an issue which was reflected in DAMA, CalMERS relied on a DAMA, quoted it extensively, very clearly argued that if you could have raised an issue and you chose not to, you're barred going forward. And then also if you look at the NPEP, which Zynga cites 2308.03, that again supports IGT and is reflective of the office policy that only excludes from estoppel when there was no interference, in fact, granted. So if the board decides there isn't an interference, that is not... estoppel doesn't apply. And the NPEP is also very clear and reflective of the policy that you don't invoke estoppel if there's no interference, in fact. And that was a ground that IGT had raised in the interference and we lost. And so the interference was issued, it proceeded, and the board asked all the parties to bring whatever substantive motions that they desired to bring. One of the substantive motions that IGT brought was written description. The substantive motions that Zynga brought and fully briefed was on 102.103 in view of Carlson. There were expert reports, hundreds of pages of expert testimony, fulsome briefs on the matter, and they never raised the Goldberg-Olden combination at that time. So again, the office policy at the time seemed very clear to us. In fact, it's further evidenced by the fact that the board actually just chose to waive the application of interference estoppel initially. They thought it applied and they waived it under 42.5, which we challenged. And then the director intervened and came up with yet another new argument. Much of your argument is going to what I tend to view as merit-oriented. But I'm bothered by an even more initial fundamental question than that. Do we even have jurisdiction to pursue this case? Yes, Your Honor, you do. This Court has the authority to review the applicability of interference estoppel to IPRs. If you look at SAS, it says that there's a strong presumption in favor of judicial review absent clear and convincing evidence that Congress meant to foreclose review. And certainly this was not an area they meant to foreclose. It's also not, in fact, I think it can't point to any evidence that Congress meant to foreclose interference estoppel. That applies when you're at the point where you're examining the decision that's tied to the board or director's decision to initiate, right? Your Honor, we don't believe that it's only tied to that. It impacts the entirety of the proceeding. And it's unlike the cases that have found or barred review, which would be Section 315B for the time bar, which explicitly said it may not be instituted if there's a time bar. Or 312, which was connected to the petition requirements that we applied with particularity. And it's much more like the cases that have approved the review, such as SAS, which is Section 318A, or Section 315C in another case was permitted to proceed with review. And this isn't a statute. It's even a regulation. So it's even further removed because it was, again, it grew out of res judicata principles. It was enacted in 1984. And Congress explicitly said they intended that interference estoppel or interference practice should proceed without impact from the AIA. So to us, it seems quite evident that it's not connected to the AIA. It had roots well before that and it was codified 30 years before the AIA was even enacted. Just so that I'm clear. So in this case, there was an IPR filed and your argument grounded in interference estoppel was made in opposing the petition for IPR and if the board had accepted your argument, it would have had to deny the petition. It wouldn't go on, grant the petition, decide other matters. Which is what happened in SAS. It's what happened in the more recent... Well, that is true, Your Honor, but we also maintain the argument throughout the entirety of the proceeding. And again, the... I mean, you know, Quozo and other cases are cases in which you can maintain an argument about something that says you shouldn't grant relief because you never should have instituted. Okay, but again, Quozo also says that it wasn't for closing review where the matter wasn't closely tied to the application and interpretation of statutes related to the Patent Office's decision to institute. And Quozo also said separately... But isn't that exactly this case? I mean, I don't know if that's the point Judge Taranto was making, but I think it may have been. What we're dealing with is a question related to the decision to institute inter partes review. Isn't that precisely what we're doing here? No, Your Honor. It's what it regards as interpreting, not an AIA statute, interpreting 41.127... Okay, so there are two parts to this. I thought you were making kind of two arguments about this phrase from Quozo. One was the statute versus regulation and the second was the tied decision to institute in an inter partes review. So I thought this was one of those. I don't know that I really appreciate or understand your distinction between interpretation of statutes as opposed to interpretation of regulations. I mean, it's easy. It's more in the wheelhouse of non-reviewability I would think if we were dealing with regulations than statutes. So you're saying that they can review... I don't understand why you think regulations give us a different thing than statutes or isn't covered. I think the bigger point is that, again, it relates to interference estoppel, not an IPR. And Quozo also... Well, that was what the point I started with. Related to the Patent Office's decision to institute an IPR. Isn't that exactly what we're talking about here? Your Honor... Are we talking about the decision? I mean, that's what the use of estoppel was in connection with the decision to institute or not institute. So I'm having a hard time seeing how that, what we're doing here, isn't related to the decision to institute an IPR. Your Honor, if I may, the rest of the Court is relating to the application and interpretation of statutes related to the Patent Office's decision to institute from Quozo. So we're saying it's not related to those statutes. And independently, Quozo also identified that there was independent review available if something violates the APA, which we say clearly this does. It changed the policy of the Office without even identifying the prior policy set forth in Adama of Hemorrhage for the MPEP. Your Honor, I know I'm over my time. I'm going to   Excuse me. Just real quickly. What do we make of the fact that 37 CFR 41 BOOTS 27A pertains to issues that have been raised and decided. It seems to me that the issue that we're looking at here was neither. It was neither raised nor decided. Am I correct? Your Honor, that's the first sentence of the estoppel. And that defines the scope of the judgment. But then the second sentence within the estoppel. But in order to satisfy that, in order to have estoppel, you have to show that the issue was raised and decided. And here, I don't believe that the issue was neither raised or  Well, Your Honor, with due respect, it says could have properly raised. It doesn't say was raised. And so if it were to be interpreted as was raised, that would not be giving a legal effect to could have raised. And then it would also be ignoring the second sentence of the estoppel language, which says that a losing party who could have properly moved, not who did        consistent with that party's failure to move. Again, it doesn't say anything about having to have it actually decided or having to actually file a  It's just that you could have filed a  And the second   estoppel wouldn't really be an estoppel principle from restatement of  This is more a claim splitting raised judicata principle. Yes, Your Honor. And it's very specific. And it's different, again, than even IPR estoppel has different language that's used in the rule versus IPR estoppel.  Well, your time's up. If my colleagues have questions on the merits, if not, we can just accept the brief. Okay. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court, Elizabeth Moulton for Zinga. So we'll discuss interference estoppel and I'll start with jurisdiction. The Court lacks jurisdiction to hear IGT's challenge to the Board's decision to  The statute could not be clearer that determinations by the  whether to institute are final and non-appealable. And the Supreme Court has explained that that means whether the agency should have instituted review at all is not appealable. We can tie this case directly to the Patent Office's regulations on interference. If you look at 42.101, which Zinga But you heard the discussion with your friend. It seems to me she makes at least two arguments about the language from Quozo. And one that the language says the application closely tied to the application interpretation of statutes. Point one, these are regulations and not statutes. And I think point two was related to the decision to institute an IPR. And this is talking about estoppel interference. Sure. So on statutes versus regulations, section 314 makes no distinction between on the basis of statutes or regulations. It just says the decision to institute is not reviewable. And this falls into the heartland of is this an institution or not? And it is. How Thrive puts that together is What do you say? Is it because the director of the board tied institution to the issue? So IGT itself did. At appendix 216 in   contended that the board should deny institution because zinga is estopped. And then at 228 they said interference estoppel bars the entire proceeding. That was decided in the institution decision at appendix 300 to 304. Their petition for rehearing at 355 asked for review of the institution decision. And then the director's decision at 382 affirms the decision on institution. Can I ask you this? What was the name of the prior art that was invoked in the Carlson? Yeah. That also didn't get decided. Suppose the IPR petition here had ground one Carlson, ground two Goldberg. Carlson clearly could be a basis for an IPR. At that point the argument about interference estoppel would not be an  about non-institution, right? It would be an  about you should not decide in this instituted as a whole. Because under S.A. it's all or nothing. Why should this be different? Just the absence of a Carlson ground in the IPR? Does that make sense? That does make sense. Both the question and the outcome I think make sense. So in this case IGT asked the board not to institute the IPR. That choice to make the challenge at institution to make it against the entire petition all grounds that brings us within the 314 D bar. Now if we got to the point where there was institution on all  under S.A.S. and now the     grounds that would become part of the final written decision. But if we look at 42.101 so that's part of the AIA regulations it says who may petition for inter  review.  So one can petition if you're not the  if you haven't filed the declaratory judgment action if you're not barred by the one year bar. And then part C says if you're not barred by  So that ties this decision the estoppel decision directly to the decision to institute which is what 314D says is not appealable. So it wasn't just based on what does interference estoppel mean in the context of pre AIA regulations it was also tied to an AIA regulation governing institution. I don't remember. Do you have 42.101 in your  They cited it in their reply your honor. Cited it or They quoted it in their reply. Okay. And I'm specifically looking at 101C. And is this different from the director's first ground that says chapter 41 principles just don't  to me.   Just to state again what's your affirmative use of this principle                   So this provision it starts with who may petition for inter partage review. I see that it's addressed to institutions. Got it. So that's our argument for no jurisdiction. Do you want to move to the director's second ground? And even the board's third ground. The waiver ground.  So as some of the questions got to, 41 127 talks about the first sentence is a  disposes of all issues that were or by motion could have properly been raised and decided. And this and decided language is very important. So this first sentence defines the first  And the second sentence goes on to say essentially you can't make new arguments on issues that fall within the judgment. In Zinga's interference the only issue decided was standing or written description and the board said it would be inappropriate and unfair to allow the interference to continue because of the lack of  So there was never any decision on obviousness or anticipation. So that So just to be clear you're reading this to me slightly mysterious language can't take action inconsistent with the party's failure to move is essentially the scope of that which I don't get from the words as simply referring back to whatever the first sentence would mean. And if the first sentence doesn't cover claims that although they could have or challenges that although they could have been raised could not have been decided then the second sentence doesn't reach further.  And that's a reasonable reading that the director reached in her decision at 384 to 385. So that would be why interference estoppel wouldn't apply to this case. And then as you mentioned there's yeah the third reason that the  reasonably waived any application of interference estoppel and proceeded with the ICR. And I think IGT's only argument against that is they say that the waiver provision only applies to procedural requirements but that's not part of the language of that the waiver provision in 42.5B. Would it be open to us to say it looks to us like 314D would    likely        BAHR's review KOZO talks about a possible exception for shenanigans and so we can at least take a peek at the merits of the grounds that were  either by the Steel Code argument that you can well I just literally made the shenanigans principle exception I'm not quite sure that's a word from KOZO it's not my word so no not in this case because this squarely falls within an institution decision it's only been brought as a challenge to the  process challenge it's just a straight application of the Patent Office's regulations on who can petition for inter-parties review if you had to how would you define the scope of shenanigans because that could be it's almost like bad faith kind of thing I don't know but it could be much broader almost anything that you think is questionable sure given how categorical and definitive 314D is I think shenanigans in a due process violation may collapse and you need to articulate a test that gives effect to 314D in the sense that shenanigans is quite a narrow exception so maybe like your honor mentioned bad faith maybe shenanigans is something that you know it when you see it sure yeah there were no examples that it was a justice briar and  no examples given of shenanigans were there no there was like we institute under 112 as opposed to yeah anyway in my memory not but there are no further questions thank you thank you will we enjoy two minutes of  if you need it thank you your honor so   couple of points in response first we are appealing the final written decision as well it is not limited to just an institution decision appeal appendix 76 of the final written decision also addresses the merits of interference estoppel two on shenanigans to your honor's question certainly acting arbitrary with respect to one party deciding that interference applies to IPRs and then saying they do not apply to yet another party is by definition arbitrary and  so certainly it would be an APA violation to come up with a new policy that deviates from the office's prior policies without any distinction as to how that would be and the plain language supports ITT in this matter not Zynga it is not tied to IPRs it is tied to the interference practice which long preceded IPRs by definition of the office's  it would make interference estoppel not apply to any IPRs and this is just a breathtaking expansion of long standing interference estoppel practice and it does apply to grounds that were not raised by parties .